# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **GEORGE HAAS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| *versus* | § | **CIVIL ACTION 4:22-cv-04235** |
| | § | **JURY TRIAL DEMANDED** |
| **ALEJANDRO MAYORKAS,** | § | |
| **SECRETARY, U.S.** | § | |
| **DEPARTMENT OF** | § | |
| **HOMELAND SECURITY, ET AL,** | § | |
| **Defendants.** | | |

## DEFENDANTS' PROPOSED MEMORANDUM OF LAW

Pursuant to the Court's local rules and the Federal Rules of Civil Procedure,

Defendant proposes the following memorandum of law.

Respectfully Submitted,

NICHOLAS J. GANJEI
United States Attorney
Southern District of Texas

By: */s/ Ariel N. Wiley*
Ariel N. Wiley
Assistant United States Attorney
Texas Bar No. 24093366
Federal ID No. 2554283
1000 Louisiana, Suite 2300
Houston, Texas 77002
Telephone: (713) 567-9000
Facsimile: (713) 718-3303
Email: ariel.wiley@usdoj.gov

ATTORNEY FOR DEFENDANT

# TABLE OF CONTENTS

Table of Contents.................................................................................................II

Table of Authorities..........................................................................................IV

Introduction ........................................................................................................1

Overview of the Law ..........................................................................................2

   I.    Standard for a pleading. ...........................................................................2

   II.   Standard for Exhaustion..........................................................................3

   III.    Rehabilitation Act. ..................................................................................4

      A.  Adverse Employment Action. ..............................................................6

   IV.    Disparate Treatment................................................................................6

   V.   Reasonable Accommodation Claim...........................................................6

   VI.    Hostile Work Environment Claim..........................................................8

      A.  Harassment. ..........................................................................................9

      B.  Harassment based on disability. .........................................................10

      C.  Affecting a term or condition of employment....................................10

   VII.    Retaliation Standard..............................................................................12

      A.  Adverse employment action. ..............................................................13

      B.  Causal Connection...............................................................................15

   VIII.  McDonnell Douglas Framework............................................................16

Argument ...........................................................................................................17

   I.    Plaintiff failed to plead any disability discrimination or hostile work environment claims. ...........................................................................17

   II.   Plaintiff did not exhaust his administrative remedies to bring a claim of disability discrimination disparate treatment, nor hostile work environment....19

   III.    Plaintiff's disability discrimination claim fails as a matter of law. ...................19

   IV.    Plaintiff does not have any evidence of disparate treatment. ...........................21

   V.   Plaintiff has no evidence that there was an available position that complied with all his restrictions. ........................................................................22

   VI.  Plaintiff was not subjected to harassment that meets the threshold of a hostile work environment claim.............................................................22

VII.    Plaintiff was not subjected to harassment due to his disability. ......................24

VIII.    The alleged harassment did not affect a term of his employment. ..................24

IX.    Plaintiff's retaliation adverse employment actions fail as a matter of law. ......25

X.    There is no evidence of a causal connection between Plaintiff's accommodation requests, and the alleged adverse employment actions. .........................................25

XI.    For all of Plaintiff's claims, including retaliation, discrimination, and hostile work environment, under the *McDonnell Douglas* framework, Defendant has a legitimate non-discriminatory reason for conducting an FFDE, taking Plaintiff's firearm, giving Plaintiff administrative duties, and then removing him. ...................................................................................................................................26

Conclusion.........................................................................................................................27

# TABLE OF AUTHORITIES

## Cases

*Atkins v. Se. Cmty. Health Sys.*,
    712 F. App'x 388 (5th Cir. 2017) ...............................................................15

*Ball v. LeBlanc*,
    792 F.3d 584 ...............................................................................................7

*Barnes v. Levitt*,
    118 F.3d 404 (5th Cir. 1997) .....................................................................3

*Barricks v. Minyard Food Stores, Inc.*,
    170 F.3d 184 (5th Cir. 1999) .....................................................................7

*Bauer v. AGCO Corp.*,
    2024 U.S. Dist. LEXIS 93131 (W.D.Tex. 2024) .......................................2

*Bennett–Nelson v. Louisiana Board of Regents*,
    431 F.3d 448 (5th Cir. 2005) .....................................................................7

*Brandon v. Sage Corp.*,
    61 F.Supp.3d 632 (W.D. Tex. 2014) .........................................................14

*Brooks v. Houston Indep. Sch. Dist.*,
    86 F.Supp.3d 577 (S.D. Tex. 2015) ...........................................................14

*Brown v. Liberty Mut. Group*,
    616 Fed. Appx. 654 (5th Cir. 2015) ...........................................................11

*Brownfield v. City of Yakima*,
    612 F.3d 1140 (9th Cir. 2010) ...................................................................23

*Bryan v. Chertoff*,
    217 F. App'x 289 (5th Cir. 2007) ...............................................................15

*Burlington N. & Santa Fe Ry. Co.*,
    548 U.S. 53 (2006) .....................................................................................13

*Cadena v. El Paso Cty.*,
   946 F.3d 717 (5th Cir. 2020) ...................................................................7

*Carrero* v. *New York City Housing Auth.*,
   890 F.2d 569 (CA2 1989) .......................................................................9

*Clark Cnty. Sch. Dist. v. Breeden*,
   532 U.S. 268 (2001) .............................................................................15

*Cody v. CIGNA Healthcare of St. Louis, Inc.*,
   139 F.3d 595 (8th Cir. 1998) .................................................................23

*Conley v. Gibson*,
   355 U.S. 41 (1957) ...............................................................................2

*Cothran v. Potter,*
   398 F. App'x 71 (5th Cir. 2010) ...........................................................16

*Crawford v. US. Dep't of Homeland Sec.*,
   245 F. App'x 369 (5th Cir. 2007) ...........................................................5

*Dark v. Potter*,
   293 Fed. Appx. 254 (5th Cir. 2008) .......................................................4

*Davis v. Dallas Area Rapid Transit*,
   383 F.3d 309 (5th Cir. 2004) ...............................................................12

*Davis v. Fort Bend Cnty.*,
   *Tex.*, 893 F.3d 300 (5th Cir. 2018) .........................................................3

*Donaldson v. CDB Inc.*,
   335 Fed. App'x 494 (5th Cir. 2009) .....................................................13

*Douglass v. United Servs, Automobile Ass'n*,
   79 F.3d 1415 (5th Cir. 1996) ...............................................................17

*EEOC v. United States Drug Mart, Inc.*,
   2024 U.S. App. LEXIS 384 (5th Cir. 2024)............................................8

*Erickson v. Pardus*,
   551 U.S. 89, (2007) .............................................................................18

*Faragher v. City of Boca Raton,*
    524 U.S. 775 (1998) ........................................................................................ 9, 10

*Feist v. La, Dep't of Justice, Office of the Att'y. Gen.,*
    730 F.3d 450 (5th Cir. 2013) ................................................................................ 15

*Fitzgerald v. Sec'y, U.S. Dep't of Veterans Affairs,*
    121 F.3d 203 (5th Cir. 1997) .................................................................................. 3

*Flowers v. S. Reg'l Physician Servs. Inc.,*
    247 F.3d 229 (5th Cir. 2001) .................................................................................. 8

*Foreman v. Babcock & Wilcox Co.,*
    117 F.3d 800 (5th Cir. 1997) ................................................................................ 22

*Fuming Wu v. Tex. A&M Univ. Sys.,*
    2011 U.S. Dist. LEXIS 141072 (S.D. Tex. Dec. 8, 2011) .................................... 14

*Goudeau v. Nat'l Oilwell Varco, L.P.,*
    793 F.3d 470 (5th Cir. 2015) ................................................................................ 15

*Griffin v. United Parcel Serv., Inc.,*
    661 F.3d 216 (5th Cir. 2011) .................................................................................. 7

*Hamilton v. Dall. Cnty.,*
    79 F.4th 494 (5th Cir. 2023) ................................................................................... 6

*Harris v. Forklift Sys.,*
    510 U.S. 17 (1993) ........................................................................................... 9, 11

*Hazen Paper Co. v. Biggins,*
    507 U.S. 604, (1993) ................................................................................... 5, 6, 21

*Hernandez v. Yellow Transp., Inc.,*
    670 F.3d 644, (5th Cir. 2012) ............................................................................... 10

*Hinojosa v. Livingston,*
    807 F.3d 657 (5th Cir. 2015) .................................................................................. 2

*Hockman v. Westward Commc'ns, LLC,*
    407 F.3d 317, 122 Fed. Appx. 734 (5th Cir. 2004) .............................................. 12

*Jenkins v. Cleco Power, LLC,*
  487 F.3d 309 (5th Cir. 2007) ..........................................................................8

*Johnson v. Halstead,*
  916 F.3d 410 (5th Cir. 2019) ..........................................................................9

*Jones v. Lubbock Cty. Hosp. Dist.,*
  834 F. App'x 923 (5th Cir. 2020) ....................................................................8

*Kang v. Bd. of Supervisors of La.* State Univ.,
  75 F. App'x 974 (5th Cir. 2003) ....................................................................11

*LHC Grp., Inc.,*
  773 F.3d 688 (5th Cir. 2014) ......................................................................5, 8

*Loomis v. Starkville,*
  Miss. Pub. Sch. Dist., 150 F. Supp. 3d 730 (N.D.Miss. Dec 15, 2019) ......14

*Lopez v. Kempthorne,*
  684 F.Supp. 2d 827 (S.D. Tex. 2010) ............................................................4

*McDonnell Douglas Corp. v. Green,*
  411 U.S. 792 (1973) ......................................................................................16

*Moreno v. Brownlee,*
  85 F. App'x 23 (5th Cir. 2004)......................................................................22

*Moylan* v. *Maries County,*
  792 F.2d 746 (CA8 1986) ................................................................................9

*Muldrow v. City of St. Louis,*
  144 S. Ct. 967 (2024) ......................................................................................6

*Myers v. Crestone Intern., L.L.C.,*
  121 F. App'x 25 (5th Cir. 2005)....................................................................15

*Paul v. Elayn Hunt Corr. Ctr.,*
  666 F. App'x 342 (5th Cir. 2016) ..................................................................14

*Porter v. Adams,*
  639 F.2d 273 (5th Cir. Unit A Mar. 1981) ......................................................3

VII

*Rachid v. Jack in the Box, Inc.*,
   376 F.3d 305 (5th Cir. 2004) ................................................................16

*Ramirez v. Gonzales*,
   225 Fed. Appx. 203 (5th Cir. 2007) ......................................................16

*Ramsey v. Henderson*,
   286 F.3d 264 (5th Cir. 2002) ...........................................................10, 11

*Raytheon Co. v. Hernandez*,
   540 U.S. 44, (5th Cir. 2010) ...................................................................5

*Reeves v. Sanderson Plumbing Prods., Inc.*,
   530 U.S. 133 (2000) ...............................................................................16

*Rhodes v. Guiberson Oil Tools*,
   75 F.3d 989 (5th Cir. 1996) ...................................................................17

*Rodriguez v. Eli Lilly & Co.*,
   820 F.3d 759 (5th Cir. 2016) ...................................................................5

*School Bd. of Nassau County v. Arline*,
   480 U.S. 273 (1987) .................................................................................7

*Septimus v. Univ. of Houston*,
   399 F.3d 601 (5th Cir. 2005) .................................................................13

*Shepherd v. Comptroller of Pub. Accounts of State of Tex.*,
   168 F.3d 871 (5th Cir. 1999) .................................................................12

*Smith v. City of Jackson*,
   351 F.3d 183  (5th Cir. 2003) ..................................................................6

*Smith v. Harris Cty., Texas*,
   956 F.3d 311 (5th Cir. 2020) ...................................................................7

*Smith v. Potter*,
   400 Fed. Appx. 806 (5th Cir. 2010) .......................................................4

*St. Mary's Honor Ctr. v. Hicks*,
   509 U.S. 502, 125 L. Ed. 2d 407, 113 S. Ct. 2742 (1993) .................17

*Steffes v. Stepan Co.,*
   144 F.3d 1070 (7th Cir. 1998) ................................................................22

*Stewart v. Miss. Transp. Comm'n,*
   586 F.3d 321 (5th Cir. 2009) ................................................................14

*T.D.S. Inc. v. Shelby Mut. Ins. Co.,*
   760 F.2d 1520 (11th Cir. 1985) ..............................................................3

*Teamsters v. United States,*
   431 U.S. 324 (1977) ..................................................................................5

*Tex. Dep't of Cmty. Affairs v. Burdine,*
   450 U.S. 248 (1981) ................................................................................16

*Thompson v. Microsoft Corp.,*
   2 F.4th 460 (5th Cir. 2021) ....................................................................8

*Thompson v. Somervell County,*
   431 Fed. Appx. 338 (5th Cir. 2011) ......................................................15

*Turco v. Hoechst Celanese,*
   *Chem. Group,* 101 F.3d 1090 (5th Cir. 1996) ......................................22

*Tutton v. Garland Indep. Sch. Dist.,*
   733 F. Supp.  (N.D. Tex. 1990) ............................................................17

*Watson v. City of Miami Beach,*
   177 F.3d 932 (11th Cir. 1999) ..............................................................23

*Weiland v. Palm Beach Cnty. Sheriff's Office,*
   792 F.3d 1313 (11th Cir. 2015) ........................................................ 2, 3

*Welsh v. Fort Bend Indep. Sch. Dist.,*
   941 F.3d 818, (5th Cir. 2019) ................................................................13

*Zenor v. El Paso Healthcare Sys., Ltd.,*
   176 F.3d 847 (5th Cir. 1999) .............................................................. 5, 8

**Statutes**

29 U.S.C. 633a(c) .................................................................................................4

42 U.S.C. § 2000e-3(a) ........................................................................................12

42 U.S.C. 2000e-16 ...............................................................................................4

5 U.S.C. § 7702 .....................................................................................................4

5 U.S.C. § 7703(b)(2) ............................................................................................4

5 U.S.C. §7703(a)(1) ..............................................................................................4

U.S.C. § 790 ...........................................................................................................4

**Rules**

Federal Rule of Civil Procedure 8(a)(2) ...........................................................2

**Regulations**

29 C.F.R. § 1614.302 .............................................................................................4

29 C.F.R. § 1614.302(a) ........................................................................................3

29 C.F.R. §1614.302(b) .........................................................................................4

29 C.F.R. §1614.310 ..............................................................................................4

29 C.F.R. pt. 1630 ..................................................................................................8

45 C.F.R. § 84.12(c)(1-3) .......................................................................................7

5 C.F.R. §1201.156 ................................................................................................4

C.F.R. section 1614.302 .........................................................................................4

X

## INTRODUCTION

1.    Plaintiff George Haas was a Customs and Border Protection (CBP) officer. A CBP officer is a weapon carrying position that requires employees to go through medical examinations before entering on duty.

2.    Plaintiff informed Defendant that his was physically unable to do his job in Secondary Inspection because of his disability of bipolar disorder.

3.    CBP requested that Plaintiff submit administratively acceptable medical documentation to enable management to make an informed decision about his employment situation and his ability to fully perform the duties of his position.

4.    Plaintiff requested an accommodation to permanently shift his schedule to start no earlier than 10:00am and end no later than midnight so he could attend medical appointments and group meetings. Plaintiff also indicated that he had to maintain a set sleep schedule and could not work secondary inspection areas because he could be triggered by the stress. Plaintiff underwent a psychiatric evaluation by an Independent Medical Examiner (IME), who concluded that Plaintiff had Bipolar Type I, a history of worsening symptoms when schedule changes, and could not safely, efficiently, or reliably perform the job.

5.    CBP identified several positions within CBP for which he was qualified, and Plaintiff declined those positions.

6.    When Plaintiff refused to take any other position, he had to be removed on April 7, 2017.

7.      Plaintiff is attempting to proceed with several claims that were not exhausted or pled. The only claim that Plaintiff properly exhausted and pled is Plaintiff's claim that he was retaliated against for an unknown protected activity.

8.      Plaintiff is unable to prove any of his claims. The evidence shows that Plaintiff's inability to perform the job and refusal to take another job is why his employment was terminated. Plaintiff does not have any evidence of retaliation. For these reasons, Plaintiff's claim fails as a matter of fact and law.

## OVERVIEW OF THE LAW

### I.      Standard for a pleading.

The Fifth Circuit has recognized the problem with a "shotgun pleading." *Hinojosa v. Livingston*, 807 F.3d 657, 684 (5th Cir. 2015) (Jones, J., dissenting) (citing *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320-23 (11th Cir. 2015)). Federal Rule of Civil Procedure 8(a)(2) requires every pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bauer v. AGCO Corp.*, 2024 U.S. Dist. LEXIS 93131, *6-7 (W.D.Tex. 2024) (citing Fed. R. Civ. P. 8(a)(2)). This requirement provides opposing parties "fair notice of what the ... claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Rule 10 addresses the form of pleadings, and Rule 10(b) expressly addresses paragraphs and separate statements, requiring a party to "state its claims or defenses in numbered paragraphs, each limited

as far as practicable to a single set of circumstances." The purpose of Rules 8(b)(2) and 10(b) is to "require the pleader to present his claims discretely and succinctly, so that, his adversary can discern what he is claiming and frame a responsive pleading [and] the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted...." *Weiland*, 792 F.3d at 1320 (quoting *T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520, 1544 n.14 (11th Cir. 1985) (Tjoflat, J., dissenting)).

## II.    Standard for Exhaustion.

Before suing for employment discrimination, an employee must exhaust administrative remedies. *See Davis v. Fort Bend Cnty., Tex.*, 893 F.3d 300, 303 (5th Cir. 2018), *aff'd sub nom. Fort Bend Cnty., Tex. v. Davis*, 139 S.Ct. 1843 (2019). The requirement serves to give the agency the information it needs to investigate and attempt to resolve the dispute outside of court. *Barnes v. Levitt*, 118 F.3d 404, 409 (5th Cir. 1997).  "If a federal employee fails to exhaust his administrative remedies, the district court cannot adjudicate the employee's Title VII claim." *Fitzgerald v. Sec'y, U.S. Dep't of Veterans Affairs*, 121 F.3d 203, 206 (5th Cir. 1997) (citing *Porter v. Adams*, 639 F.2d 273, 276 (5th Cir. Unit A Mar. 1981) (noting that exhaustion is "an absolute prerequisite" to suit under § 2000e–16)).

A federal employee may either (1) bring a mixed complaint before the EEO or (2) bring a mixed appeal before the MSPB. 29 C.F.R. § 1614.302(a) (defining "mixed

case complaint" and "mixed case appeal"); 5 U.S.C. § 7702. Pursuant to subsection (b) of C.F.R. section 1614.302, the employee must elect one of these paths; he cannot do both. 29 C.F.R. §1614.302(b). The EEO or the MSPB will decide both the issues of discrimination and the adverse employment action. 29 C.F.R. § 1614.302; 5 C.F.R. §1201.156 ("the judge will decide both the issue of discrimination and the appealable action within 120 days after the appeal is filed"). Once the employee who initiates either of these procedural paths receives a final determination, the employee may pursue judicial review of the final determination. 29 C.F.R. §1614.310; 5 U.S.C. §7703(a)(1) & (b)(1)-(2). Cases of discrimination subject to provisions of section 7702 "shall be filed under section 717(c) of the Civil Rights Act of 1964 (42 U.S.C. 2000e-16) [or] section 15(c) of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 633a(c)) . . .." 5 U.S.C. § 7703(b)(2). These provisions require exhaustion of administrative remedies before the federal court may have jurisdiction. *Smith v. Potter*, 400 Fed. Appx. 806, 812 (5th Cir. 2010).

## III.    Rehabilitation Act.

The Rehabilitation Act provides the exclusive remedy for federal employees alleging disability discrimination in the workplace. 29 U.S.C. § 790, *et seq.* Lopez v. Kempthorne, 684 F.Supp. 2d 827 (S.D. Tex. 2010) citing Dark v. Potter, 293 Fed. Appx. 254, 258 (5th Cir. 2008) (internal citations omitted). The relevant substantive provisions of the Americans with Disabilities Act apply to federal employees through

the Rehabilitation Act. *Crawford v. US. Dep't of Homeland Sec.,* 245 F. App'x 369, 380 (5th Cir. 2007) (citing 29 U.S.C. § 791). To establish a prima facie discrimination claim under the ADA and by extension, under § 501 of the Rehabilitation Act, a plaintiff must prove: (1) that he has a disability; (2) that he was qualified for the job; and (3) that he was subject to an adverse employment decision on account of his disability, *i.e.,* there was a "causal nexus," *i.e.,* "causal connection," between the adverse employment action and his disability. *EEOC v. LHC Grp., Inc.,* 773 F.3d at 688-695, 697, 699 (5th Cir. 2014) (brackets and internal quotes omitted) (citing *Zenor v. El Paso Healthcare Sys., Ltd.,* 176 F.3d 847, 853 (5th Cir. 1999)); *Rodriguez v. Eli Lilly & Co.,* 820 F.3d 759, 765 (5th Cir. 2016) (citing *LHC Grp., Inc.,* 773 F.3d at 697).

The recommendation found that Plaintiff brought a disparate impact, disability discrimination claim. The Fifth Circuit has said that "'[d]isparate treatment' . . . is the most easily understood type of discrimination. *Raytheon Co. v. Hernandez,* 540 U.S. 44, 52, (5th Cir. 2010). The employer simply treats some people less favorably than others because of their race, color, religion, sex, or [other protected characteristic]." *Teamsters v. United States,* 431 U.S. 324, 335 (1977). *See also Hazen Paper Co. v. Biggins,* 507 U.S. 604, 609, (1993) (discussing disparate-treatment claims in the context of the Age Discrimination in Employment Act of 1967). Liability in a disparate-treatment case "depends on whether the protected trait . . . actually motivated the employer's decision." *Id.,* at 610.

### A. Adverse Employment Action.

In the context of a discrimination claim, an adverse employment action is a decision that affects the terms, conditions, or privileges of one's employment. *Hamilton v. Dall. Cnty.*, 79 F.4th 494, 502-503 (5th Cir. 2023). And though the Supreme Court has held that an employee seeking Title VII relief need not satisfy any significance test, the employee "must show some harm" resulting from an allegedly discriminatory act to prevail. *Muldrow v. City of St. Louis*, 144 S. Ct. 967, 972 (2024).

### IV.     Disparate Treatment.

In a disparate treatment case, liability depends on whether the protected trait - here, disability – actually motivated the employer's decision. *Smith v. City of Jackson*, 351 F.3d 183, 186  (5th Cir. 2003) citing *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993). The Plaintiff must show that the employer relied on a facially discriminatory policy requiring adverse treatment of disabled employees or may have been motivated by a disability to discriminate against an individual on an ad hoc basis – "whatever the employer's decision-making process, a disparate treatment claim cannot succeed unless the employee's protected trait actually played a role in that process and had a determinative influence on the outcome." *Id.* Proof of discriminatory motive is thus critical to the success of a plaintiff's discriminatory treatment claim. *Id.*

### V.     Reasonable Accommodation Claim.

The Rehabilitation Act "impose[s] upon public entities an affirmative obligation

to make reasonable accommodations for disabled individuals." *Smith v. Harris Cty., Texas*, 956 F.3d 311, 317 (5th Cir. 2020) (quoting *Bennett–Nelson v. Louisiana Board of Regents*, 431 F.3d 448, 454 (5th Cir. 2005)). To establish a *prima facie* case on a failure-to-accommodate claim, a plaintiff must show that: (1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity denied or failed to make reasonable accommodations. *Id.* (quoting *Ball v. LeBlanc*, 792 F.3d 584, 596 n. 9 (5th Cir. 2015)). The law does not require an employer to provide a plaintiff's preferred accommodation, only one that is reasonable. *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 224 (5th Cir. 2011). "An accommodation is reasonable if 'it does not impose undue financial or administrative burdens or 'fundamentally alter the nature of the service, program or activity.'" *Id.* (quoting *Cadena v. El Paso Cty.*, 946 F.3d 717, 724 (5th Cir. 2020)).

Factors to consider when determining whether an accommodation is "reasonable" include: (1) the size, facilities, and resources of the defendant, (2) the nature and cost of an accommodation, (3) the extent to which the accommodation is effective in overcoming the effects of the disability, and (4) whether the accommodation would require a fundamental alteration in the nature of the defendant's program. *See, e.g.,* 45 C.F.R. § 84.12(c)(1-3); *School Bd. of Nassau County v. Arline,* 480 U.S. 273, 288 n.17 (1987). Reasonable accommodations include modifications to an existing job or reassignment to a vacant position but do not include creating a vacancy or a new job. *Barricks v. Minyard Food Stores, Inc.,* 170 F.3d 184 (5th Cir. 1999). "A function is

'essential' if it bears 'more than a marginal relationship' to the employee's job." *E.E.O.C. v. LHC Grp., Inc.,* 773 F.3d 688, 697 (5th Cir. 2014) (quoting *Zenor v. El Paso Healthcare Sys.,* Ltd., 176 F.3d 847, 853 (5th Cir. 1999)). "The inquiry into whether a particular function is essential initially focuses on whether the employer actually requires employees in the position to perform the functions that the employer asserts are essential." *Id.* at 698 (quoting Interpretive Guidance on Title I of the Americans With Disabilities Act, 29 C.F.R. pt. 1630, app. § 1630.2(n)).

"It is the plaintiff's burden to request reasonable accommodations." *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007). In addition, "[a] plaintiff bears the burden of proving the reasonableness of an accommodation in his prima facie case." *Jones v. Lubbock Cty. Hosp. Dist.,* 834 F. App'x 923, 926 (5th Cir. 2020).

## VI. Hostile Work Environment Claim.

To establish a hostile work environment claim under the ADA, a plaintiff "must show that: (1) he belongs to a protected group, (2) was subject to unwelcome harassment (3) based on his disability, (4) which affected a term, condition, or privilege of employment, and (5) [his employer] knew or should have known of the harassment and failed to take prompt, remedial action." *EEOC v. United States Drug Mart, Inc.*, 2024 U.S. App. LEXIS 384, *3-4 (5th Cir. 2024); *Thompson v. Microsoft Corp.*, 2 F.4th 460, 471 (5th Cir. 2021) (citing *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 235-36 (5th Cir. 2001)).

### A. Harassment.

Harassment allegations go well beyond "simple teasing, offhand comments, and isolated incidents." *Johnson v. Halstead*, 916 F.3d 410, 418 (5th Cir. 2019) citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). The Supreme Court has directed courts to determine whether an environment is sufficiently hostile or abusive by "looking at all the circumstances," including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employees work performance." *Faragher* at 787-788 citing *Harris v. Forklift Sys.,* 510 U.S. 17, 23 (1993).

Standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a "general civility code." Properly applied, they will filter out complaints attacking "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Faragher* at 788 citing B. Lindemann & D. Kadue, Sexual Harassment in Employment Law 175 (1992) (hereinafter Lindemann & Kadue) (footnotes omitted). The Supreme Court has made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment, and the Courts of Appeals have heeded this view. *Faragher* at 788 citing *Carrero* v. *New York City Housing Auth.*, 890 F.2d 569, 577-578 (CA2 1989); *Moylan* v. *Maries County*, 792 F.2d 746, 749-750 (CA8 1986); *see also* 1 Lindemann

9

& Grossman 805-807, n. 290 (collecting cases granting summary judgment for employers because the alleged harassment was not actionably severe or pervasive).

### B. Harassment based on disability.

The Supreme Court has explained that Title VII does not prohibit "genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex." *Faragher*, 524 U.S. at 676. A recurring point in these opinions is that "simple teasing," offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the "terms and conditions of employment." *Id* at 787-788.

### C. Affecting a term or condition of employment.

Harassment affects a "term, condition, or privilege of employment" if it is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651, (5th Cir. 2012) citing *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (citations omitted). Workplace conduct "is not measured in isolation." *Id.* To deem a work environment sufficiently hostile, "all of the circumstances must be taken into consideration." *Id.* This includes "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* To be actionable, the work environment must be

10

"both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Hernandez* at 651 citing *Faragher* at 787.

To establish a hostile work environment, claim under Title VII, a plaintiff must prove that the harassment complained of was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)).

In *Kang v. Bd. of Supervisors of La. State Univ,* the Fifth Circuit held that a poor performance evaluation, being unjustly criticized in front of peers, and being written up were not enough to make out a prima facie case of hostile work environment. *Kang v. Bd. of Supervisors of La.* State Univ., 75 F. App'x 974, 976-77 (5th Cir. 2003) (per curiam). In *Brown v. Liberty Mut. Group*, the Plaintiff alleged that, while pregnant, she was discriminated against because of her sex, subject to a hostile work environment, had her FMLA interfered with when she failed to meet her sales goals, was admonished, audited, overwhelmed in a meeting, and then constructively discharged when she resigned while on FMLA. *Brown v. Liberty Mut. Group*, 616 Fed. Appx. 654, 656 (5th Cir. 2015). The Fifth Circuit affirmed the district court and held that she failed to state a discrimination, hostile work environment, or FMLA retaliation claim. *Id.* The Fifth Circuit also found that the treatment was not so severe as to create an abusive working environment. *Id.* In *Hockman v. Westward Commc'ns, LLC*, the Fifth Circuit concluded

11

that a male coworker's conduct did not affect a term, condition, or privilege of employment where, *inter alia*, he brushed against plaintiff's breasts and behind, once slapped her behind with a newspaper, and once attempted to kiss plaintiff. *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 326-29, 122 Fed. Appx. 734 (5th Cir. 2004); *see also Shepherd v. Comptroller of Pub. Accounts of State of Tex.*, 168 F.3d 871, 872, 875 (5th Cir. 1999) (holding that employee's work environment was not rendered objectively hostile by co-worker remarking that plaintiff's "elbows are the same color as [her] nipples," repeatedly attempting to look down plaintiff's clothing, rubbing one of his hands from plaintiff's shoulder down to her wrist, and patting his lap and remarking "here's your seat" at meetings).

## VII.  Retaliation Standard.

It is unlawful for an employer to "discriminate against any of his employees . . . because [the employee] has opposed any practice made unlawful . . . by this subchapter, or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." Section 42 U.S.C. § 2000e-3(a).

A plaintiff must point to facts showing that: (1) he engaged in a statutorily protected activity; (2) he was subjected to an adverse employment action; and (3) there is a causal link between the protected activity and the adverse employment action. *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004). The third element,

causation, requires the plaintiff to point to evidence showing that the adverse employment action would not have occurred but for the protected conduct. *See Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005).

### A. Adverse employment action.

For purposes of Title VII's anti-retaliation provision, the Supreme Court has held that an adverse employment action is defined slightly more broadly than an ultimate employment decision. *Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 826, (5th Cir. 2019) citing *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. 53, 67-68 (2006); *Donaldson v. CDB Inc.*, 335 Fed. App'x 494, 506 (5th Cir. 2009).

A Plaintiff seeking to establish a retaliatory adverse employment action "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id*; *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quotations omitted).

The Supreme Court spoke of "*material* adversity" to distinguish "trivial harms." *Burlington N* at 68. Title VII's anti-retaliation provisions do not protect employees from "petty slights, minor annoyances, and simple lack of good manners." *Id.* When determining whether an allegedly retaliatory action is materially adverse, courts "'look to indicia such as whether the action affected 'job title, grade, hours, salary, or benefits' or caused 'a diminution in prestige or change in standing among co-workers.'" *Welsh* at

827 citing *Paul v. Elayn Hunt Corr. Ctr.*, 666 F. App'x 342, 346 (5th Cir. 2016) (quoting *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009)). As a matter of law, being chastised by supervisors is considered a petty slight that the Supreme Court has not recognized as actionable. *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009). Additionally, Courts in the Fifth Circuit have found that a threat does not amount to an adverse employment action. *Loomis v. Starkville Miss. Pub. Sch. Dist.*, 150 F. Supp. 3d 730, 752 (N.D. Miss. Dec 15, 2009 ("As a matter, the law is clear that threats do not amount to adverse employment actions."); *Brandon v. Sage Corp.*, 61 F.Supp.3d 632, 649 (W.D. Tex. 2014) ("Although the Fifth Circuit has not ruled on whether threatened pay cuts can amount to materially adverse action in the retaliation context, the few courts addressing threats of pay cuts under the materially adverse standard have found that they do not constitute materially adverse employment action.") (collecting cases); *Brooks v. Houston Indep. Sch. Dist.*, 86 F.Supp.3d 577, 586 (S.D. Tex. 2015) ("Threats of retaliation that do not significantly alter conditions of employment are generally not enough for a *prima facie* Title VII case.") (collecting cases). Timing matters as well. Courts have found that a negative performance evaluation that occurred three months after the protected activity was not an adverse employment action. *Fuming Wu v. Tex. A&M Univ. Sys.,* 2011 U.S. Dist. LEXIS 141072, *26 (S.D. Tex. Dec. 8, 2011).

### B. Causal Connection

"A plaintiff alleging retaliation may satisfy the causal connection element by showing close timing between an employee's protected activity and an adverse action against him." *Feist v. La, Dep't of Justice, Office of the Att'y. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (quotation and alteration omitted). The temporal proximity must generally be "very close." *Id.* (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001)). The more attenuated in time, the more other evidence of discrimination is required to show retaliation. *See Id.* at 454–55. In *Myers v. Crestone Intern., L.L.C.*, a three-month period between the plaintiff's protected activity and the alleged retaliatory act was insufficient to demonstrate causation. *Myers v. Crestone Intern., L.L.C.*, 121 F. App'x 25, 28 (5th Cir. 2005). The Fifth Circuit has repeatedly held that gaps of eight to ten months between the protected activity and the alleged adverse employment action break a causal chain. *Atkins v. Se. Cmty. Health Sys.*, 712 F. App'x 388, 391 (5th Cir. 2017) (ten-month gap); *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 479 (5th Cir. 2015) (eight-to ten-month gap); *Bryan v. Chertoff*, 217 F. App'x 289, 293 (5th Cir. 2007) (four-month gap insufficient to establish causal nexus where personnel who suspended plaintiff were unaware of complaint and legitimate, non-discriminatory reasons undergirded the suspension).

Even at the prima facie stage, temporal proximity can only establish a causal link when it is connected to the decision maker's knowledge of the protected

activity. *See Thompson v. Somervell County*, 431 Fed. Appx. 338, 342 (5th Cir. 2011)

citing *Clark Cnty. Sch. Dist. v. Breeden,* 532 U.S. 268, 273, (2001) (per curiam) ("The cases

that accept mere temporal proximity between *an employer's knowledge of* protected activity

and an adverse employment action as sufficient evidence of causality to establish a

prima facie case uniformly hold that the temporal proximity must be very close."

(emphasis added) (internal quotation marks and citation omitted)); *Cothran v. Potter,* 398

F. App'x 71, 73-74 (5th Cir. 2010) (unpublished). Fifth Circuit precedent requires

evidence of knowledge of the protected activity on the part of the decision maker and

temporal proximity between the protected activity and the adverse employment action.

*Ramirez v. Gonzales,* 225 Fed. Appx. 203, 210 (5th Cir. 2007) (unpublished).

## VIII.  McDonnell Douglas Framework.

Once the plaintiff has addressed these four elements necessary to state a claim,

the burden shifts to the defendant to explain how the adverse employment action was

nondiscriminatory. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the

defendant proffers a nondiscriminatory basis for the action, then the plaintiff must

point to evidence raising a fact dispute as to whether (1) the explanation is a pretext for

discrimination or (2) there are mixed motives—the employer's explanation, while true,

is only one factor in the decision, and discrimination is another. *Rachid v. Jack in the Box,

Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (citation omitted). The plaintiff must show a

genuine factual dispute material to deciding whether the defendant discriminated based

on the plaintiff's membership in a protected class. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

The defendant's burden is one of production, not of proof. If the defendant meets this production burden, the plaintiff must adduce evidence that would permit a reasonable trier of fact to find that the articulated reason is a pretext for intentional discrimination. *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 992-93 (5th Cir. 1996) (en banc); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-14, 125 L. Ed. 2d 407, 113 S. Ct. 2742 (1993); *Tutton v. Garland Indep. Sch. Dist.*, 733 F. Supp. 113, 1116 (N.D. Tex. 1990) (at summary judgment stage, plaintiff must raise a fact issue). Plaintiff's subjective belief that he was discriminated against is insufficient to raise a fact issue once defendant has articulated nondiscriminatory reason for employment action. *Douglass v. United Servs, Automobile Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

## ARGUMENT

### I. Plaintiff failed to plead any disability discrimination or hostile work environment claims.

Plaintiff failed to plead a disability discrimination or hostile work environment claim; therefore, these claims should not be put before a jury.

Plaintiff explicitly brought five claims (1) race discrimination, (2) religious discrimination, (3) national origin discrimination, (4) retaliation, and (5) Plaintiff's termination does not promote the efficiency of the federal service. Claim 5, is not an

actual claim, but after a discussion at the February 20, 2024, hearing, the Court determined this could be a MSPB claim because Plaintiff mentioned the Administrative Procedure Act (APA) earlier in the complaint.

In a case with a pro se litigant, it is expected that the complaint should be liberally construed and held to less stringent standard. *Erickson v. Pardus*, 551 U.S. 89, 94, (2007) ("A document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (citations omitted) (internal quotation marks omitted). That does not apply here. In this case, Plaintiff is, and has always been, represented by qualified counsel. And yet Defendant is expected to pick through Plaintiff's complaint to determine if Plaintiff really meant to sue for the discrimination claims he explicitly identified, or another kind of discrimination claim.

Defendant had to file two summary judgment motions because of Plaintiff's unclear complaint. Dkt. 14 and Dkt. 25.

The first time Plaintiff argued that he had a disability discrimination and hostile work environment claim in his response to the amended motion for summary judgment. But, identifying a disability discrimination or a hostile work environment claim for the first time in response to a summary judgment motion, is far too late. Below Defendant will argue why any disability discrimination and hostile work environment claims fail but the Court need not reach those arguments because Plaintiff failed to properly bring these claims and did not identify any causes of action associated with

these claims. For whatever reason, Plaintiff did not identify disability discrimination or a hostile work environment as two of the claims for which he is suing, and it is unfair to force Defendant to litigate and argue claims that were not listed, especially in a complaint drafted by counsel. As such, Plaintiff's disability discrimination and hostile work environment claims should be dismissed and should not proceed to the jury.

## II.    Plaintiff did not exhaust his administrative remedies to bring a claim of disability discrimination disparate treatment, nor hostile work environment.

Administratively, Plaintiff filed a complaint for age and disability discrimination for denial of a reasonable accommodation, and retaliation. Dkt.14-1 at 3 (Defendant's Motion for Summary Judgment Ex. A at 2). Plaintiff does not make any claims of disparate treatment, nor hostile work environment. Plaintiff wholly failed to exhaust his administrative remedies for disparate treatment or a hostile work environment, as they do not appear in Plaintiff's administrative complaint. Therefore, the disparate treatment and hostile work environment claims must be dismissed and should not proceed to the jury.

## III.    Plaintiff's disability discrimination claim fails as a matter of law.

Since Plaintiff failed to plead a disability discrimination claim, it is unclear under what grounds Plaintiff alleges that he was discriminated against for a disability. Defendant will assume Plaintiff is alleging that Defendant discriminated against Plaintiff because of his bipolar disorder and additionally failed to accommodate him. All these

19

claims fail.

Plaintiff's prima facie case fails because he was not qualified to be CBP officer. The position requires the officer to always maintain mental alertness, under dynamic and stressful conditions. Dkt. 25-3 at 2 (Defendant's Amended Motion for Summary Judgment, Exhibit C at 1). The position specifically requires that the officers are not impaired in a way that prevents them from performing the job:

> The standard requires that the person be medically and physically capable of performing the essential job functions and duties of the position safely and efficiently without aggravating existing health problems or endangering the health and safety of the individual, others, or national security. The individual must be free of any organic, structural or functional impairment(s) or existing health problem(s) that would be aggravated in response to the work environment and/or would affect safe and efficient job performance.
>
> Therefore, any condition or history of a medical or physical problem resulting from an injury or disease (including psychiatric, emotional, psychological problem or anatomical loss) that may affect safe and efficient job performance or conduct or endanger the health and safety of the individual, others, or national security may be disqualifying if
>
> (1) the condition has not become well stabilized or
> (2) recurrence cannot be medically ruled out or
>
> (3) the person may experience sudden or subtle incapacitation or impairment of physical or mental function.

*See* Dkt. 25-3 at 2 (Defendant's Amended Motion for Summary Judgment, Exh. C at 1).

Plaintiff has bipolar disorder, and it is undisputed that his ailment is a lifelong disorder, that will result in Plaintiff having several flare ups at work and could have more in the future. Plaintiff was limited regarding the times, days, hours, and locations

where he could work. Plaintiff could not work in secondary inspections specifically due to his concern that the public would be more hostile, something Defendant has no control over, and would adversely affect his ability to perform necessary functions. Plaintiff also could not work before 10:00am, or after 10:00pm, and could not work on Tuesday afternoons because he has a support group meeting and was not comfortable asking other employees to swap shifts with him. Plaintiff could not even work from home because the CBP officer position does not qualify for telework. Dkt. 25-7 at 3.

Clearly, Plaintiff could experience sudden or subtle incapacitation or impairment of his physical or mental function. Hence why Plaintiff could not work in a hostile area. Plaintiff, by his own admission, was not qualified for the position, and could not perform the essential functions of the job. Therefore, if the Court finds that Plaintiff did bring a disability discrimination claim, Plaintiff still fails to establish a *prima facie* case, and the claim fails as a matter of law and should not proceed to a jury.

## IV.    Plaintiff does not have any evidence of disparate treatment.

The Plaintiff has not produced any evidence that Defendant relied on a discriminatory policy or had a discriminatory motive. Thus, Plaintiff's disability discrimination disparate treatment claim should be dismissed and should not proceed to a jury.

**V.    Plaintiff has no evidence that there was an available position that complied with all his restrictions.**

As argued above, Plaintiff's restrictions are so numerous and severe that Plaintiff could not perform the essential functions of the job. When Plaintiff turned down the several positions Defendant offered, there were no other accommodations that could be made. Dkt. 25-2 at 3-4 and 7 It is Plaintiff's burden to show that there was an available position he could have been accommodated with that complied with all his restrictions because the CBP is under no obligation to create a new position to accommodate Plaintiff. *Moreno v. Brownlee*, 85 F. App'x 23, 28 (5th Cir. 2004); *Turco v. Hoechst Celanese Chem. Group*, 101 F.3d 1090, 1094 (5th Cir. 1996); *Steffes v. Stepan Co.*, 144 F.3d 1070, 1073 (7th Cir. 1998); *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 809 (5th Cir. 1997).

The evidence shows that Defendant offered Plaintiff several positions. Dkt. 25-2 at 3-4 and 7. Plaintiff does not have any evidence that there was a position available that complied with all of Plaintiff's restrictions, that Plaintiff was qualified to perform, and was never offered. As such, Plaintiff's reasonable accommodation claim fails and should not proceed to a jury.

**VI.    Plaintiff was not subjected to harassment that meets the threshold of a hostile work environment claim.**

Plaintiff's harassment claim fails as a matter of law because the actions he complains of do not meet the threshold for harassment.

Since Plaintiff did not lay out a hostile work environment claim in his complaint Defendant will have to assume that Plaintiff is alleging thar he experienced a hostile work environment when he was removed, his right to carry a federal firearm was revoked, he was reassigned to administrative duties on May 29, 2015, and a Fitness for Duty Exam (FFDE) ordered on August 8, 2015. Dkt. 32 at 14.

Plaintiff does not allege any facts that would allow a reasonable trier of fact to conclude that this is harassing behavior. The agency has every right to determine whether Plaintiff is fit for duty and revoke his right to carry a federal firearm if he's not. Even the Ninth Circuit has recognized that "[p]olice departments place armed officers in positions *where they can do tremendous harm if they act irrationally*." *Brownfield v. City of Yakima*, 612 F.3d 1140, 1145 (9th Cir. 2010) quoting *Watson v. City of Miami Beach*, 177 F.3d 932 (11th Cir. 1999) (emphasis added). The court held that the ADA does not "require a police department to forego a fitness for duty examination to wait until a perceived threat becomes real or questionable behavior results in injuries." *Id* citing *Watson* at 935; *see also Cody v. CIGNA Healthcare of St. Louis, Inc.*, 139 F.3d 595, 599 (8th Cir. 1998) ("Employers need to be able to use reasonable means to ascertain the cause of troubling behavior without exposing themselves to ADA claims . . . .").

Asking Plaintiff to take a FFDE after Plaintiff expressed an inability to work in a stressful environment, taking back their firearm when it was determined that Plaintiff could be potentially dangerous, and then temporarily reassigning Plaintiff to a position that did not require a firearm while they looked for a new position, does not constitute

harassment. And as already argued above, the only reason Plaintiff was removed is because he would not accept any of the positions offered to him.

Plaintiff's allegations do not amount to harassment, and as such, his hostile work environment claim should be dismissed and should not proceed to a jury.

## VII.   Plaintiff was not subjected to harassment due to his disability.

In this case, Plaintiff does not provide any evidence that his alleged harassment was due to his disability. Plaintiff received an FFDE, his firearm was removed, and he was placed on administrative leave, not because he had a disability, but because Plaintiff said he could not perform certain aspects of the job because the stress was dangerous for him, and as an armed officer, it could have deadly results. The subsequent removal of the firearm, and placement on administrative leave, was a result of the FFDE determining that Plaintiff was unstable and his flare ups unpredictable. Plaintiff's assertion that these actions occurred because of his disability and not because of his inability to do the job, is unsupported by any competent summary-judgment evidence. As such, the hostile work environment claim should be dismissed and should not proceed to a jury.

## VIII.  The alleged harassment did not affect a term of his employment.

Plaintiff does not make any allegations that amount to abusive behavior that would affect a term or condition of his employment other than his removal. As previously argued, Plaintiff's alleged harassing behavior was protocol for any employee

24

who has an armed position and may have become a danger to other employees or civilians. Plaintiff has no other allegations or evidence to show that Plaintiff experienced behavior abusive enough to affect a term or condition of her employment. As such, Plaintiff's claim should be dismissed.

## IX.    Plaintiff's retaliation adverse employment actions fail as a matter of law.

Plaintiff alleges that he was retaliated against when he was removed, his right to carry a federal firearm was revoked, reassignment to administrative duties on May 29, 2015, and the FFDE ordered on August 8, 2015. Dkt. 32 at 14.

Apart from the removal, these claims do not amount to adverse employment actions because Plaintiff has failed to identify any evidence that his grade, salary, or benefits were affected, nor any evidence that he had a change in standing. As such, Plaintiff's retaliation claims fail as a matter of law and should not be put before the jury.

## X.    There is no evidence of a causal connection between Plaintiff's accommodation requests, and the alleged adverse employment actions.

Plaintiff does not provide any evidence that the reason he received an exam, his firearm confiscated, placed on administrative duties, and eventually removed, is because he requested an accommodation, and not because he informed Defendant that he could no longer safely do a dangerous job because of his concern of stress. What's more, except for the FFDE, these events are months or years apart. As such, there is no

implied causal connection between the events and the adverse employment action. Therefore, the retaliation claim should be dismissed and should not proceed to a jury.

**XI.    For all of Plaintiff's claims, including retaliation, discrimination, and hostile work environment, under the *McDonnell Douglas* framework, Defendant has a legitimate non-discriminatory reason for conducting an FFDE, taking Plaintiff's firearm, giving Plaintiff administrative duties, and then removing him.**

Defendant has a legitimate non-discriminatory reason for giving Plaintiff an FFDE, taking his firearm, putting him on administrative duties, and then removing him. It is worth noting that the Court agrees that Defendant has a legitimate, non-discriminatory reason for removing Plaintiff. Defendant, however, cannot be justified in their removal, and yet be unjustified in all the steps leading up to Plaintiff's removal.

As consistently shown in these pleadings, Plaintiff informed Defendant that he was unable to perform essential functions of the job and could not work in stressful environments. Dkt. 25-2 at 2 As a result, Defendant requested an FFDE, which concluded that Plaintiff was unstable and could have an unexpected flare up that would endanger other employees and civilians. Dkt. 25-2 at 3 For safety, Defendant had to remove Plaintiff's federal firearm, and reassigned Plaintiff to an administrative position while they looked for another position for which Plaintiff was qualified. *Id.* Plaintiff turned down all the positions offered, and as a result, had to be removed. Dkt. 25-2 at 3-4 and 7.

Plaintiff's allegations for retaliation, and any other claim, fail under the *McDonnell*

*Douglas* framework. Defendant had an unquestionably legitimate, non-discriminatory reasons for its actions and Plaintiff can point to no competent summary judgment evidence showing that those reasons were a pretext for discrimination. As such, Plaintiff's retaliation claims, and any remaining claims the Court says Plaintiff pled, should be dismissed and this case should not be brought to a jury.

## CONCLUSION

Plaintiff failed to properly plead his claims, exhaust his administrative remedies and his claims fail as a matter of law. Furthermore, Plaintiff will not be able to meet his burden of proof on any of his claims. Thus, this case should be dismissed, the Plaintiff take nothing, and Defendant should recover their costs.

Respectfully Submitted,

NICHOLAS J. GANJEI
United States Attorney
Southern District of Texas

By: */s/ Ariel N. Wiley*
    Ariel N. Wiley
    Assistant United States Attorney
    Texas Bar No. 24093366
    Federal ID No. 2554283
    1000 Louisiana, Suite 2300
    Houston, Texas 77002
    Telephone: (713) 567-9000
    Facsimile: (713) 718-3303
    Email: ariel.wiley@usdoj.gov

ATTORNEY FOR DEFENDANT

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 18, 2026, the foregoing pleading was filed with the Court through the Court's CM/ECF system on all parties and counsel registered with the Court CM/ECF system.

/s/ *Ariel N. Wiley*
Ariel N. Wiley
Assistant United States Attorney